UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

David Echevarria,

       Plaintiff,

                **Hon. Hugh B. Scott**

                12CV129A

     v.

                **Report &
                Recommendation**


Dr. Wesley Canfield et al.,

       Defendants.
_____

  Before the Court are the following motions: the defendants' motion to dismiss (Docket No. 10); the plaintiff's motion granting the complaint (Docket No. 14) and the plaintiff's motion for appointment of counsel. (Docket No. 23).

**Discussion**

  The plaintiff, David Eccheverria ("Eccheverria"), commenced this action against the defendants alleging that the defendants were deliberately indifferent to his medical needs. (Docket No. 1).[1] The plaintiff states that in June of 2008 he injured his back while lifting a

---

[1] The complaint named two John Doe defendants who were subsequently identified as Dr. Wesley Canfield and Nurse Benjamin Oakes, who were employed at the Southport Correctional Facility.

heavy locker while incarcerated at the Bare Hill Correctional Facility. (Docket No. 1 at ¶ 1; (Docket No. 14 at page 1). Ecchiverria states that several days later he was later seen by a doctor and prescribed pain medication. (Docket No. 1 at ¶3). The plaintiff asserts that his back pain continued and an x-ray was taken on November 3, 2008 revealing that he was suffering from mild multilevel degenerative disc disease. (Docket No. 1 at ¶ 6). On January 5, 2009, Ecchiverria was transferred to the Southport Correctional Facility ("Southport"). (Docket No. 1 at ¶ 7). He states that he immediately advised the medical staff at Southport of his continuing back pain and asked that an MRI be performed. (Docket No. 1 at ¶ 8). According to the plaintiff, the defendants advised him that he had "mild arthritis" and prescribed pain medication. (Docket No. 1 at ¶ 8). Ecchverria alleges that on June 21, 2009, he wrote to the nurse practitioner stating that he continued to have severe pain in his back and left leg, and again, asked for an MRI to be performed. (Docket No. 1 at ¶10, see also June 21, 2009 letter attached to the complaint as Exhibit B). The plaintiff received a written response to his letter on June 29, 2009 stating that he had already been seen by the facility doctor and that he should continue to use the sick call procedure to address his medical concerns. (Docket No. 1 at ¶11; see also June 29, 2009 response attached to the complaint as Exhibit C). On July 19, 2009, Ecchiverria filed a grievance stating that the pain medications were not helping and that he was denied an MRI. (Docket No. 1 at ¶ 12). The plaintiff's grievance was granted "to the extent that he had an x-ray on his back on November 3, 2008 which shows he has mild arthritis in his back. The MD doesn't feel that an MRI is indicated at this time." (Docket No. 1 at ¶¶13-14; see also grievance response attached to the complaint as Exhibit E). Ecchiverria appealed the denial of his grievance to Inmate Grievance Program Central Review Committee which upheld the denial of his grievance noting that the

physician has not deemed an MRI to be medically necessary and that Ecchiverria had been scheduled to start physical therapy to address his back pain. (Docket No. 1 at ¶14; see also August 26, 2009 decision denying appeal of grievance attached to the complaint as Exhibit F). Almost a year later, in July of 2010, the plaintiff asserts that he was transferred to the Auburn Correctional Facility ("Auburn") where he continued to complain of his back pain. An MRI was performed on November 23, 2010 revealing that the plaintiff had various herniated discs and advanced degenerative disc disease at the L1-2 through L5-S1 levels. (Docket No. 1 at ¶18; see also MRI report attached to the complaint as Exhibit G).  On March 3, 2011, the plaintiff was seen by Dr. Antonio Culebras, a neurologist. According to Ecchiverria, Dr. Culebras stated that the plaintiff could not have his condition corrected surgically because he had too many herniated discs. (Docket No. 1 at ¶ 20).   Dr. Culebras' report, upon examination, found: "chronic back pain with multiple level broad disc herniations. Clinically no evidence of radiculopathy, atrophies or sensory changes. Pain on percussion at lumbar spine. Recommend TENS applications. Wear corset in lumbar region. Consider lumbar injections to reduce inflammation (Pain Clinic at UH). Continue physical therapy." (See Dr. Culebras' report dated March 3, 2011, attached to the complaint as Exhibit H).  Ecchiverria claims that the medical personnel at Southport were indifferent to his medical needs because they failed to order an MRI which might have revealed the seriousness of his back condition at an earlier stage allowing for corrective surgery. (Docket No. 1 at ¶ 22).

**Motion to Dismiss**

      The defendants have filed a motion to dismiss the complaint asserting that the plaintiff's

complaint "amounts to nothing more than a dispute over medical care and does not state a claim of constitutional dimension." (Docket No. 11 at page 1). The plaintiff has filed a cross-motion to have his complaint granted (Docket No. 14) as well as various additional responses to the defendant's motion to dismiss. (Docket Nos. 19 and 22).

Standard of Review

The defendants move to dismiss some of the claims in the Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. The court accepts the material facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff and against the defendants. See Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir.1998); Cohen v. Koenig, 25 F.3d 1168, 1171–72 (2d Cir.1994); Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir.1992). However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness. Albany Welfare Rights Org. Day Care Ctr., Inc. v. Schreck, 463 F.2d 620 (2d Cir.1972), cert. denied, 410 U.S. 944, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973). The court is required to read the complaint broadly and with great latitude on a motion to dismiss. Yoder v. Orthomolecular Nutrition Inst., 751 F.2d 555, 558 (2d Cir.1985). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1985).

The Supreme Court has clarified the pleading standard required to withstand a motion to dismiss. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (internal citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 565-66 (2007)(Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)). Under Iqbal, factual allegations must be sufficient to support necessary legal conclusions. Iqbal, 556 U.S. at 680-681. "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir.2010) (quoting Iqbal, 556 U.S. at 680).  The Court must then consider the factual allegations in the complaint to determine if they plausibly suggest an entitlement to relief.  Iqbal, 556 U.S. at 681; see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir.2009).

      Thus, while the pleading standard under Rule 8 does not require detailed factual allegations, it demands more than unadorned, conclusory accusations. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action is not sufficient. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility requirement is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant

has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Iqbal, 556 U.S. at 681.

### The Plaintiff's Eighth Amendment Claim

The Eighth Amendment outlaws "cruel and unusual punishments." U.S. Const. amend. VIII. "This includes punishments that 'involve the unnecessary and wanton infliction of pain.' " Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). See also Hernandez v. Keane, 341 F.3d 137, 144 (2d. Cir. 2003). While "society does not expect that prisoners will have unqualified access to health care," Hudson v. McMillian, 503 U.S. 1, 9 (1992), an inmate can nevertheless prevail on an Eighth Amendment claim arising out of medical care by showing that a prison official acted with "deliberate indifference" to the inmate's serious medical needs. Hathaway v. Coughlin, ("Hathaway I"), 37 F.3d 63, 66 (2d Cir.1994) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

This standard incorporates both objective and subjective elements. The objective "medical need" element measures the severity of the alleged deprivation, while the subjective "deliberate indifference" element ensures that the defendant prison official acted with a sufficiently culpable state of mind. Smith v. Carpenter, 316 F.3d 178, 183 -184 (2d. Cir. 2003). To prevail on a constitutional claim of deliberate medical indifference, a plaintiff must prove that he suffered from an objectively serious medical condition, which the defendants knew of and deliberately disregarded. Green v. Senkowski, 2004 WL 1292786, *1 (2nd Cir. 2004) citing Chance, 143 F.3d at 702 (collecting cases). A serious medical condition is one that may result in

death, degeneration, or "chronic and substantial pain." Id.; see Hathaway I, 37 F.3d at 66. This standard contemplates a "condition of urgency, one that may produce death, degeneration, or extreme pain." Nance v. Kelly, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting)). A serious medical need arises where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Chance, 143 F.3d at 702. To satisfy the subjective prong of the test, prison officials must have acted with a sufficiently culpable state of mind, i.e., deliberate indifference. Plaintiff must therefore show that prison officials intentionally denied, delayed access to, or intentionally interfered with prescribed treatment. See Estelle, 429 U.S. at 104-05. See also Farmer v. Brennan, 511 U.S. 825, 837 (1994)("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). "[T]he subjective element of deliberate indifference 'entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." ' Hathaway II, 99 F.3d at 553 (quoting Farmer, 511 U.S. at 835). Accordingly, subjective recklessness can satisfy the deliberate indifference standard only where "the official has actual knowledge that the prisoner faced a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. However, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

     Also, it is well-established that a prisoner is not entitled to receive the medical treatment

of his choice.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment or a different doctor does not give rise to an Eighth Amendment violation. Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir.1986) (The essential test is one of medical necessity and not one simply of desirability).  A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a §1983 claim. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir.1998); Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir.1986); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.1981).  The Constitution does not require that an inmate receive a particular course of treatment, or that an inmate see a requested specialist. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir.1997), Davis v. Hall, 992 F.2d 151, 153 (8th Cir.1993).  Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. Chance v.Armstrong, 143 F.3d. 698 (2d. Cir. 1998); Johnson v. Snow, 2008 WL 2224949 (N.D.N.Y., 2008); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Sires v. Berman, 834 F.2d 9, 13 (1st Cir.1987) ("Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, [a court] will not second guess the doctors." (citations omitted)). Finally, a plaintiff asserting an Eighth Amendment claim based upon inadequate medical care must establish deliberate indifference for each individual defendant against whom the claim is asserted. Brock v. Wright, 315 F.3d 158, 164 (2d Cir.2003)(stating that plaintiff must show deliberate indifference on the part of a "particular defendant").

Based upon the allegations in the complaint, the foundation of the plaintiff's Eighth Amendment claim is the failure of Dr. Canfield and Nurse Oakes to order an MRI of his back

while the plaintiff was incarcerated at Southport. It is well-established that the failure to order an MRI, by itself, does not amount to deliberate indifference. In Estelle, the Supreme Court rejected a similar claim stating that "the question whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. ... A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment." Estelle, 429 U.S. at 97. See also Crum v. Marini, 2007 WL 3104750 (N.D.N.Y. 2007)(assertion that doctor failed to order MRI "fails to state an actionable claim of deliberate indifference."); Vento v. Lord, 1997 WL 431140 at *5 (S.D.N.Y. 1997)("plaintiff's [denied] x-ray request and claim that without new x-rays her physical therapy is ineffective fails to state a claim of deliberate indifference"); Sharp v. Jeanty, 1993 WL 498095 at *2 (S.D.N.Y. 1993)(dismissing complaint where prisoner's knee was x-rayed but he was not given an orthroscan, because plaintiff's medical "records indicate[d] an extensive and ongoing course of medical treatment" of his injury, and many of his allegations amounted to "second-guessing the treatments of his health care providers," and explaining that " '[a] prisoner's disagreement with his prescribed treatment does not afford a basis for relief under § 1983.'").

In response to the defendants' motion dismiss, the plaintiff argues that he is not merely claiming a failure to order an MRI, but also that his back injury went "untreated" because the defendants did not order the MRI which would have allegedly revealed the seriousness of his injury. (Docket No. 22 at page 3). To the extent the plaintiff attempts to claim that he received no treatment in response to his complaints of back pain, such a claim is conclusively contradicted by the allegations in the plaintiff's complaint and other statements made by the plaintiff in response to the instant motion. As noted above, the plaintiff's complaint alleges that although the

9


defendants failed to order an MRI, they did treat the plaintiff's complaints of back pain with pain medication and physical therapy.  Indeed, in his responsive filings, the plaintiff acknowledged that he was provided pain medication, but argues that had a right to, but did not receive, "adequate medial treatment" and that his injury worsened "due to the defendants not diagnosing [his] injury correctly." (Docket No. 19 at page 4-6).  Ecchiverria's assertions that he did not receive "adequate treatment" and that the defendants "failed to properly diagnose" his injury may assert a claim for medical malpractice,[2] but they are insufficient to assert a claim of deliberate indifference.  As noted above, a claim of medical malpractice based upon a failure to properly treat or diagnose does not amount to a constitutional violation.  Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

     Upon a fair reading of the allegations in the complaint, with reasonable inferences made in favor of the plaintiff, the plaintiff has not asserted a plausible claim suggesting an entitlement to relief under the standard set in Iqbal.  The plaintiff has failed to assert a factual basis supporting the contention required under Farmer that Dr. Canfield or Nurse Oakes knew of and disregarded an excessive risk to his health or safety; and that the defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and that the defendants respectively drew that inference.  The plaintiff has not presented any basis from which to conclude that this deficiency could be corrected by amendment.

---

[2]  The Court takes no position as to whether such allegations sufficiently assert a claim of medical malpractice.

Based on the above, it is recommended that the defendant's motion to dismiss (Docket No. 10) be GRANTED, and that the plaintiff's cross-motion (Docket No. 14) be denied.[3]

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

---

[3] The plaintiff has again moved for the appointment of counsel (Docket No. 23). The plaintiff's prior motion was previously denied by District Judge David Larimer (Docket No. 6). There is no constitutional right to appointed counsel in civil cases. However, under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. *See, e.g.*, Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc., 865 F.2d 22, 23 (2d Cir. 1988). Assignment of counsel in this matter is clearly within the judge's discretion. In re Martin-Trigona, 737 F.2d 1254 (2d Cir. 1984). The factors to be considered in deciding whether or not to assign counsel include the following: (1) Whether the indigent's claims seem likely to be of substance; (2) Whether the indigent is able to investigate the crucial facts concerning his claim; (3) Whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder; (4) Whether the legal issues involved are complex; and (5) Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination. Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997); *see also* Hodge v. Police Officers, 802 F.2d 58 (2d Cir. 1986); Carmona v. United States Bureau of Prisons, 243 F.3d 629, 632 (2d Cir.2001); Abdur-Raqiyb v. Erie County Medical Center, 2006 WL 1800710, at *1 (W.D.N.Y.,2006). In considering a motion for the appointment of counsel, the Court may also consider the merits of the plaintiff's claim. The Second Circuit has held that "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 172 (2d Cir.1989). Therefore, the Court must first look to the "likelihood of merit" of the underlying dispute, Cooper, 877 F.2d at 174, and "even though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the ... claim are thin and his chances of prevailing are therefore poor [,]" Carmona v. United States Bureau of Prisons, 243 F.3d 629, 632 (2d Cir.2001) (denying counsel on appeal where petitioner's appeal was not frivolous but nevertheless appeared to have little merit). See also Smolen v. Corcoran, 2013 WL 4054596 (W.D.N.Y.,2013)(In deciding whether to grant a request to appoint pro bono counsel, district courts should evaluate several factors, including the merits of the claim, the factual issues and complexity of the case, the plaintiff's ability to present the case, and the plaintiff's inability to obtain counsel.). Upon consideration of these factors and in light of the recommendation above, the plaintiff's motion for the appointment of counsel (Docket No. 23) is also denied.

**ANY OBJECTIONS** to this Report & Recommendation must be filed with the Clerk of this Court within fourteen(14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be

supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

        So Ordered.

                                               */s/ Hugh B. Scott*
                                        United States Magistrate Judge
                                        Western District of New York

Buffalo, New York
January 13, 2014